United States Court of Appeals

For the Eighth Circuit

_____

No. 24-3107
_____

MFA Enterprises, Inc., doing business as West Central Agri Services

*Petitioner*

v.

Occupational Safety and Health Review Commission; Secretary of Labor

*Respondent*s
_____

Petition for Review of an Order of the
Occupational Safety & Health Review Commission
_____

Submitted: June 12, 2025
Filed: August 28, 2025
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

     The Secretary of Labor cited MFA Enterprises, Inc., doing business as West Central Agri Services, ("West Central") for a willful and serious violation of 29 C.F.R. § 1910.132(d)(1)(i) for failing to ensure employees wore personal protective equipment ("PPE") while working on top of railcars. After a three-day evidentiary hearing, the Occupational Safety and Health Review Commission's administrative law judge ("ALJ") upheld the citation. The Commission denied discretionary review

of the ALJ's decision, and West Central now petitions for our review. Concluding the Federal Railroad Administration ("FRA") preempts the jurisdiction of the Occupational Safety and Health Administration ("OSHA"), we vacate the citation and reverse the ALJ's order.

## I. BACKGROUND

West Central operates a grain handling facility in Adrian, Missouri. It ships grain from this facility via the railroad and fills the railcars through a "railcar loadout" process. As part of railcar loadout, an employee must access the top of each railcar, which is approximately fifteen feet off the ground. The employee then opens each of the lids on the railcar roof to allow a spout to transfer the grain from storage bins into the railcar through each opening.

A Trackmobile pushes the railcars along the track into position under the grain spouts after an employee opens the lids. After the railcars are filled, the Trackmobile pushes them out of the grain filling station, and then an employee closes and seals the lids.

On December 31, 2020, an OSHA inspector travelled to the facility to investigate an explosion. As part of the investigation, the inspector viewed a recording that included footage of an employee not wearing fall protection PPE while he worked on top of a railcar. The inspector's subsequent interviews revealed that employees frequently did not wear fall protection PPE while working on top of railcars, and, while supervisors were aware of this activity, employees were not disciplined.

Since 2016, West Central had a fall protection system in place for the railcar loadout process. It consisted of a trolley on suspended I-beams that ran overhead and parallel to each of the railroad tracks. An employee would connect to the trolley through a harness and a self-retracting lifeline. At some point prior to December

2020, West Central removed the fall protection system on the east track, but it was still in place on the west track.

Employees did not like to use the fall protection system because the harness was uncomfortable, the system prevented them from reaching all the lids, and occasionally the trolley became sticky and would not glide on the I-beams. Despite these problems with the system, West Central's safety training for its employees included the following instruction: "If there is railcar fall protection present, you must use it every time."

While there was no written hazard assessment of the dangers of a fall during railcar loadout, the ALJ found West Central acknowledged that working on top of rail cars presented a fall hazard based on the existence of the fall protection system, testimony from an MFA Incorporated safety director, and the safety training. The ALJ's Decision and Order upheld the citation of a willful and serious violation and imposed a penalty of $122,878.80.

## II. DISCUSSION

We will uphold the factual findings in a Commission order if they are "supported by substantial evidence on the record considered as a whole." Perez v. Loren Cook Co., 803 F.3d 935, 938 (8th Cir. 2015) (en banc) (quoting Solis v. Summit Contractors, Inc., 558 F.3d 815, 823 (8th Cir. 2009)). We will uphold the Commission's legal conclusions "unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. (quoting Solis, 558 F.3d at 823).

West Central asserts that OSHA's application of § 1910.132(d)(1)(i) to employees working on top of railcars is preempted by the FRA.[1] The preemption

---

[1] OSHA claims that West Central waived preemption on appeal because it did not identify preemption in its Statement of Issues in its opening brief. West Central discusses preemption at pages 7 through 11 and page 17 of its opening brief, which

-3-

provision in the Occupational Safety and Health Act provides: "[n]othing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." § 653(b)(1). Under this provision, Congress deprived OSHA of jurisdiction when (1) another federal agency has statutory authority to regulate the cited working conditions and (2) the other agency has exercised this authority by issuing applicable standards or regulations. Chao v. Mallard Bay Drilling, Inc., 534 U.S. 235, 241-42 (2002). The federal agency's standards do not have to be "the same or substantially the same as those of OSHA" to divest OSHA of jurisdiction under § 653(b)(1). U.S. Air, Inc., 689 F.2d at 1193.

The term "working conditions" means "the environmental area in which an employee customarily goes about his daily tasks." S. Ry. Co. v. OSHRC, 539 F.2d 335, 339 (4th Cir. 1976). When another federal agency has set standards for the environmental area where the employee customarily works, OSHA's jurisdiction is preempted. U.S. Air, Inc., 689 F.2d at 1193. Thus, the Federal Aviation Administration's security protocols for passenger lounges preempted OSHA's regulations on exit doors. Id. at 1194; see also Columbia Gas of Pa., Inc. v. Marshall, 636 F.2d 913, 914, 917 (3d Cir. 1980) (the Department of Transportation's regulation of pipeline trenches preempted OSHA's regulations on atmospheric testing).

The OSHA regulation at issue in this case states that an employer must "[s]elect, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment." § 1910.132(d)(1)(i). The plain language of this regulation does not address working

---

means it raised the issue on appeal. Cf. SD Voice v. Noem, 60 F.4th 1071, 1077 n.3 (8th Cir. 2023) (a party who fails to raise an argument in his opening brief waives that argument). Regardless, preemption under 29 U.S.C. § 653(b)(1) is jurisdictional and may be raised *sua sponte* by the court. U.S. Air, Inc. v. OSHRC, 689 F.2d 1191, 1193 (4th Cir. 1982).

on top of railcars. This broad and general provision requires looking elsewhere to determine whether it applies to these working conditions. See Wal-Mart Distrib. Ctr. # 6016 v. OSHRC, 819 F.3d 200, 203-04 (5th Cir. 2016) (reviewing additional OSHA provisions to resolve an ambiguity in § 1910.132(d)(1)).

In 1996, John B. Miles, Jr., then-Director of OSHA's Directorate of Enforcement Programs, issued an interpretation letter (the "Miles Memorandum") to the Regional Administrators. John B. Miles, Jr., Enforcement of Fall Protection on Moving Stock, http://www.osha.gov/laws-regs/standardinterpretations/1996-10-18. The Miles Memorandum included an interpretation of when § 1910.132(d) applies to working on top of railcars, which stated the following:

> Additionally, it would not be appropriate to use the personal protection equipment standard, 29 CFR 1910.132(d), to cite exposure to fall hazards from the tops of rolling stock, unless employees are working atop stock that is positioned inside of or contiguous to a building or other structure where the installation of fall protection is feasible. In such cases, fall protection systems often can be and, in fact, are used in many facilities in the industry.

Id. The ALJ relied on this interpretative statement to uphold the citation under § 1910.132(d)(1)(i).

Next, we must determine whether the FRA has set standards for working on top of railcars. In 1978, the FRA issued a policy statement identifying the working conditions with respect to which the FRA was presently exercising its authority ("FRA Policy Statement"). Railroad Occupational Safety and Health Standards; Termination, 43 Fed. Reg. 10,583, 10,585 (Mar. 14, 1978). If the FRA Policy Statement covers the applicable working conditions, it preempts OSHA's jurisdiction. Velasquez v. S. Pac. Transp. Co., 734 F.2d 216, 218 (5th Cir. 1984); see Consol. Rail Corp., Nos. 91-3133 & 91-3134, 1993 WL 119665, at *1 (OSHRC Mar. 31, 1993) (the Commission recognizes the preemptive effect of the FRA Policy Statement).

-5-

The FRA asserted its authority over working conditions unique to railroad operations. 43 Fed. Reg. at 10,586. This included the protection of employees working around railcars. Id. ("rules pertaining to the protection of employees working between or under rolling equipment, operations within yard limits . . . ."). The FRA also asserted its authority over walking-working surfaces. Id. at 10,587. Included in its assertion of authority over walking-working surfaces was the design of locomotives and other rolling equipment, such as railcars, used on a railroad because "working conditions related to such surfaces are regulated by FRA as major aspects of railroad operations." Id. The FRA acknowledged the application of OSHA regulations to walking-working surfaces for areas other than railcars such as in offices, shops, and other fixed workplaces. Id. Through the FRA Policy Statement, the FRA has asserted its authority over employees working around railcars and over the walking-working surfaces on railcars. Id. at 10,586-87.

The FRA asserted its authority over the environmental area of railcars. By asserting its authority over these working conditions, the FRA has preempted OSHA's jurisdiction over employees working on top of railcars. See U.S. Air, Inc., 689 F.2d at 1194 (agency's security protocols over passenger lounges preempted OSHA's exit door regulations); Columbia Gas of Pa., Inc., 636 F.2d at 917 (agency's regulations on pipeline trenches preempted OSHA's atmospheric testing regulations). OSHA's attempt to assert jurisdiction over these same working conditions through the Miles Memorandum is invalid.

The ALJ incorrectly found no preemption by failing to analyze the relevant working conditions. See U.S. Air, Inc., 689 F.2d at 1193 (preemption occurs when the other federal agency has standards covering the working conditions). Instead, the ALJ found no preemption because the FRA Policy Statement does not mention PPE. As support for its conclusion, the ALJ relied on unrelated Commission cases regarding PPE use in repair shops, which is an environmental area the FRA left mostly to OSHA. Cf. 43 Fed. Reg. at 10,587 ("OSHA regulations on guarding of open pits, ditches, etc. would not apply to inspection pits in locomotive or car repair

Appellate Case: 24-3107   Page: 6   Date Filed: 08/28/2025 Entry ID: 5552192

facilities."). The ALJ failed to act in accordance with the law when it found no preemption.

Because the ALJ's legal conclusion on preemption was not in accordance with the law, we cannot uphold the decision. Perez, 803 F.3d at 938. The FRA preempts OSHA's jurisdiction over working conditions on top of railcars.

### III. CONCLUSION

The citation for violation of 29 C.F.R. § 1910.132(d)(1)(i) is vacated, and the ALJ's decision is reversed.

_____