# No. 24-3107

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**MFA ENTERPRISES, INC., DBA WEST CENTRAL AGRI SERVICES,**

**Petitioner,**

**v.**

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; SECRETARY OF LABOR,**

**Respondents.**

On Petition for Review of a Final Order of the
Occupational Safety and Health Review Commission
(Administrative Law Judge Christopher D. Helms)

## RESPONDENT SECRETARY OF LABOR'S PETITION FOR PANEL REHEARING

JONATHAN BERRY
Solicitor of Labor

EDMUND C. BAIRD
Associate Solicitor for
Occupational Safety and Health

HEATHER R. PHILLIPS
Counsel for Appellate Litigation

BRIAN A. BROECKER
Senior Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(202) 693-5484

JANUARY 29, 2026

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. iii

TABLE OF AUTHORITIES........................................................ iv

INTRODUCTION ..................................................................... 1

BACKGROUND....................................................................... 1

   1.   OSHA's and FRA's Complementary Regulation of Railroad-Related Occupational Safety and Health. ................................. 2

   2.   MFA Contests OSHA's Citation............................................. 4

   3.   The Panel's Decision. ......................................................... 6

REASONS FOR GRANTING REHEARING ..................................... 7

   1.   The Panel Overlooked Procedural Rules and Circuit Precedent Establishing that MFA Waived its Preemption Defense. .............. 8

   2.   The Panel Overlooked Commission and Supreme Court Precedent Establishing that Section 4(b)(1) Preemption Is Non-Jurisdictional. ................................................................. 9

   3.   The Panel Overlooked the Absence of a Factual Finding that MFA was a General-System Railroad.................................... 12

   4.   The Panel Overlooked that the Supreme Court Has Rejected its Approach to Defining MFA Employees' Working Conditions. ...... 13

   5.   The Panel Misapprehended that FRA Has Not Asserted Authority Over All Work Occurring on Top of Railcars.............. 15

   6.   The Panel Overlooked that MFA Employees' Work on Top of Railcars Was Not Related to the Safe Movement of Railroad Equipment. ................................................................. 17

CONCLUSION................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) .................................................................. 10

*Austin Indus. Specialty Services, L.P. v. OSHRC,*
  765 F.3d 434 (5th Cir. 2014) .................................................... 17

*Chao v. Mallard Bay Drilling, Inc.,*
  534 U.S. 235 (2002) ...................................................... 13, 14, 15

*Columbia Gas of Pa., Inc. v. Marshall*,
  636 F.2d 913 (3d Cir. 1980) ...................................................... 11

*Conrad Yelvington Distributors, Inc.,*
  No. 14-0713, 2016 WL 1377794 (OSHRC Mar. 30, 2016) ................... 3, 13

*Cubillos v. Holder*,
  565 F.3d 1054 (8th Cir. 2009) .................................................... 8

*FTC v. Morton Salt Co.*,
  334 U.S. 37 (1948) .................................................................. 11

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428 (2011) ................................................................ 10

*Lombard Bros., Inc.*,
  No. 13164, 1977 WL 7718 (OSHRC July 8, 1977) .................................. 10

*Mansfield Indus., Inc.*,
  No. 19-0550, 2020 WL 8871368 (OSHRC Dec. 31, 2020) ......................... 10

*S. Ry. Co. v. OSHRC*,
  539 F.2d 335 (4th Cir. 1976) .................................................... 13

*Sanzone v. Mercy Health*,
954 F.3d 1031 (8th Cir. 2020) ................................................... 11

*Sickle v. Torres Advanced Enter. Solutions, LLC*,
884 F.3d 338 (D.C. Cir. 2018) ................................................... 11

*StarTran v. OSHRC*,
290 F. App'x 656 (5th Cir. 2008) .............................................. 11

*U.S. Air, Inc. v. OSHRC*,
689 F.2d 1191 (4th Cir. 1982) ..................................................... 6

*U.S. v. Warren*,
788 F.3d 805 (8th Cir. 2015) ...................................................... 9

*United States v. Paz*,
411 F.3d 906 (8th Cir. 2005) ....................................................... 9

*Woodward v. Credit Service Intern'l Corp.*,
132 F.4th 1047 (8th Cir. 2025) ................................................... 8

## Statutes

28 U.S.C. § 1331 ............................................................... 10, 11
29 U.S.C. § 651(b) ..................................................................... 2
29 U.S.C. § 653 ...................................................................... 11
29 U.S.C. § 653(b)(1) .............................................................. 15
29 U.S.C. § 660(a)–(b) ............................................................ 11

## Rules

Fed. R. App. P. 28(a)(5) .............................................................. 8
Fed. R. App. P. 40(b)(1)(A) ......................................................... 1

## Regulations

29 C.F.R. Part 1910.................................................................... 4
29 C.F.R. § 1910.132(d)(1)(i) ..................................................... 5
29 C.F.R. § 1975.3(c).................................................................. 2
49 C.F.R. Part 209 .......................................................... 2, 3, 12

49 C.F.R. § 218.21 ......................................................................... 16

**Federal Register Notice**

Railroad Occupational Safety and Health Standards; Termination,
   43 Fed. Reg. 10583 (Mar. 14, 1978)................................................... passim

# INTRODUCTION

The Occupational Safety and Health Administration (OSHA) and the Federal Railroad Administration (FRA) share responsibility for assuring railroad employees' safety and health. FRA focuses on conditions related to the safe *movement* of railroad equipment over rails, while OSHA is responsible for all other workplace aspects of railroad-employee safety and health. This Court erroneously determined, without briefing from the parties, that FRA regulates (thereby preempting OSHA from regulating) *any* work that occurs on top of a railcar in *any* context.

As an initial matter, the preemption issue was not before the court. But even if it had been, the panel overlooked that the record did not establish that MFA Enterprises, Inc. (MFA) was a general-system railroad that FRA regulates. And, even if MFA were a general-system railroad, the panel deviated from Supreme Court precedent, misunderstood FRA's regulatory purview, and overlooked that MFA employees' work on railcars does not fall within that purview. Panel rehearing is therefore necessary.

# BACKGROUND

Panel rehearing is justified when a court has "overlooked or misapprehended" a "point of law or fact." Fed. R. App. P. 40(b)(1)(A). Because the panel resolved the preemption issue without the benefit of the

1

Secretary of Labor's briefing, the Secretary respectfully submits that the panel overlooked several legal and factual issues that render its ultimate conclusion mistaken.

### 1. OSHA's and FRA's Complementary Regulation of Railroad-Related Occupational Safety and Health.

The Secretary, through OSHA, is responsible for "assur[ing] so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Section 4(b)(1) of the Occupational Safety and Health Act (OSH Act) provides, however, that "[n]othing in this [chapter] shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." *Id.* § 653(b)(1). Section 4(b)(1)'s "sole purpose" is "to avoid duplication of effort by Federal agencies." 29 C.F.R. § 1975.3(c).

FRA administers federal railroad safety statutes under delegation from the Secretary of Transportation. *See* Appendix A to 49 C.F.R. Part 209—Statement of Agency Policy Concerning Enforcement of the Federal Railroad Safety Laws (summarizing laws); 49 U.S.C. § 1.89. FRA views its "statutory jurisdiction [as] extend[ing] to all entities that can be construed as railroads," and it has exercised its jurisdiction over all railroads operating on the general

system of railroad transportation ("general system"), *i.e.*, "the network of standard gage track over which goods may be transported throughout the nation . . . ." Appendix A to 49 C.F.R. Part 209.

Excluded from FRA safety regulations are "plant railroads"; *i.e.*, those "whose entire operations are confined to an industrial installation" and are therefore "not part of the [general] system." *Id*. That category includes entities that operate on trackage connected to the general system but are not part of the general system itself. For example, FRA disclaims authority over plant track whose only access to the general system is through a switch "for the receipt of shipments" that a major railroad uses "to pick up or set out cars." *Id.*; *see, e.g., Conrad Yelvington Distributors, Inc.,* No. 14-0713, 2016 WL 1377794, at *2 (OSHRC Mar. 30, 2016).

In 1978, FRA issued a policy statement regarding its regulation of railroad occupational safety and health. *See* Railroad Occupational Safety and Health Standards; Termination, 43 Fed. Reg. 10583, 10584 (Mar. 14, 1978). In it, FRA set out the types of railroad safety and health issues that FRA and OSHA would respectively cover. *Id.* at 10585–87. FRA's delineation addressed issues arising solely from "the operations of common carriers *in the general system*" while disclaiming any intent "to address railroads which are not in the general system." *Id*. at 10585 (emphasis added).

Within the general system, FRA reserved for itself regulation of "railroad operations"—*i.e.*, "*the movement* of equipment over the rails," *id.* (emphasis added). It explicitly focused on the "safety of railroad operations"—*i.e.*, "the conditions and procedures necessary to achieve the safe movement of equipment over the rails." *Id.* That includes regulation of the "[t]rack, roadbed, and associated devices and structures," railroad "equipment," and "human factors which impact on the safety of railroad operations." *Id.* at 10586. OSHA, meanwhile, retained regulatory jurisdiction over all other railroad conditions. *Id.* at 10587.

FRA also explained how its regulations would interact with OSHA standards in 29 C.F.R. Part 1910. *Id.* at 10587–90. Notably, OSHA's walking-working surfaces standards in subpart D apply "in railroad offices, shops, and other fixed work places" but not "with respect to *the design* of locomotives and other rolling equipment used on a railroad." *Id.* at 10587 (emphasis added). OSHA's generally applicable personal protective equipment (PPE) standards in subpart I also "apply according to their terms" but not "to hazards growing out of railroad operations." *Id.* at 10588.

## 2. MFA Contests OSHA's Citation.

Employees of MFA, a grain-handling company, filled railcars with grain at MFA's Adrian, Missouri, facility. Panel Opinion (Op.) 2. This activity

occurred on rail lines that spurred off from a main railroad line, passed through MFA's facility, and reconnected with the main railroad line. ADD-3(A.R.Vol.6(71) at 3); A-065 (Tr. 51).[1] A general-system railroad delivered empty railcars on one of the two lines. A-068, 079, 169 (Tr. 64, 109-110, 742). MFA employees then used a "trackmobile" to reposition the railcars so they could be filled with grain. Op. 2. Once stationary, MFA employees accessed the tops of the railcars to open and close their lids. *Id.*; A-170 (Tr. 746).

OSHA cited MFA for violating a generally applicable PPE standard, 29 C.F.R. § 1910.132(d)(1)(i), that requires employees to use PPE that the employer has selected to protect employees from identified hazards. Op. 2–3. MFA had installed a personal fall protection system, a type of PPE, to protect employees from falling off railcars while opening and closing lids, but MFA did not require employees to use it. *Id.*

In its opening brief to the panel, MFA argued that it lacked constitutionally fair notice that it could be cited under OSHA's PPE standard and that it did not "willfully" violate the standard. MFA Brief (Br.) 2, 19–39. In pre-argument sections, MFA discussed preemption in relation to its fair

---

[1] Record citations are to MFA's Addendum ("ADD-[##]") and Appendix ("A-[###]"), with parallel citations to the November 18, 2024 certified list ("A.R.Vol.[#]([Item/Exhibit [#]) at [#]," except citations to the hearing transcript, Volumes 1-3, which are abbreviated "Tr. [#]").

notice defense; particularly, MFA alleged that OSHA had publicly acknowledged that "preemption issues," *id.* at 11, prevented the agency from regulating the tops of railcars as walking-working surfaces under subpart D. *See, e.g., id.* at 17. The Secretary's brief pointed out that MFA had not contested the ALJ's rejection of the company's section 4(b)(1) preemption defense, rendering the issue waived. Sec'y Br. 18–19 n.11. MFA did not dispute that contention, or otherwise argue preemption, in its reply brief or at oral argument.

### 3. The Panel's Decision.

On August 28, 2025, the panel issued its opinion reversing the Commission's order and vacating OSHA's citation. The panel found that MFA raised the preemption issue because it "discusse[d] preemption" in its opening brief, Op. 3–4 n.1, and "[r]egardless," preemption "is jurisdictional and may be raised *sua sponte* by the court." *Id.* (citing *U.S. Air, Inc. v. OSHRC*, 689 F.2d 1191, 1193 (4th Cir. 1982)).

The panel then defined MFA employees' working conditions as "the environmental area of railcars," overlooking whether the conditions occurred on the general system and whether they related to the safe movement of railcars. Ignoring those distinctions, the panel found that FRA had preempted OSHA's citation. Specifically, the panel pointed to FRA's statements that it

has rules "pertaining to the protection of employees working between or under rolling equipment," *id.* at 5 (quoting 43 Fed. Reg. at 10586), and that OSHA's walking-working surfaces standards do not apply to "the design" of railcars because "working conditions related to such surfaces are regulated by FRA as major aspects of railroad operations," *id.* (quoting 43 Fed. Reg. at 10587).

## REASONS FOR GRANTING REHEARING

The panel's decision overlooked and misapprehended several case-dispositive points of law and fact. First, MFA's preemption defense was not properly before the court; the panel overlooked that (1) procedural rules and circuit precedent established that MFA waived any argument regarding section 4(b)(1) preemption, and (2) preemption in this context is *not* a jurisdictional issue that the Court must address regardless of whether the parties raise it.

Additionally, the panel overlooked that the Commission did not find, and the record does not establish, that MFA was in fact a general-system railroad, which is a necessary prerequisite for FRA to preempt OSHA's citation. And, even if MFA were a general-system railroad, the panel further (1) overlooked that the Supreme Court has previously rejected the panel's approach to defining MFA employees' working conditions, (2) misconstrued FRA's assertions of regulatory authority, and (3) glossed over the fact that MFA employees' work on stationary railcars has no relation to the safe

movement of railroad equipment. For all these reasons, the panel erred when it concluded that FRA preempted OSHA's citation and rehearing is thus warranted.

### 1. The Panel Overlooked Procedural Rules and Circuit Precedent Establishing that MFA Waived its Preemption Defense.

The panel erred in finding that MFA preserved its preemption defense on appeal. *Id.* at 3–4 n.1. The Federal Rules of Appellate Procedure require that the opening brief contain "a statement of the issues presented for review," Fed. R. App. P. 28(a)(5), and that the argument section contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies," *id.* at 28(a)(8)(A). Consistent with these rules, this Court requires that an appellant include all issues in the statement of issues, and then both specifically and meaningfully argue them.[2]

The panel overlooked these requirements and MFA's failure to satisfy them. MFA's statement of issues did not mention either preemption or FRA. "Preemption" does not appear anywhere in the argument section of MFA's briefs. At no point did MFA contest the ALJ's rejection of its preemption

---

[2] *See, e.g., Woodward v. Credit Service Intern'l Corp.*, 132 F.4th 1047, 1057–58 (8th Cir. 2025) (issue waived when "not included in the Statement of Issues" and not supported by "any specific argument") (citations omitted); *Cubillos v. Holder*, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009) (issue waived where appellant "ma[d]e reference to" it but "did not develop th[e] argument").

defense or allege that OSHA's citation should be vacated on preemption grounds.

Merely discussing preemption in relation to a separate issue (fair notice) does not suffice. *Cf. United States v. Paz*, 411 F.3d 906, 911 n. 4 (8th Cir. 2005) (issue abandoned where appellant made fleeting references to it in the context of a different issue). Doing so gave the Secretary no reason to believe she had to address whether FRA preempted OSHA from citing MFA under a subpart I PPE standard. Lest there be any doubt, MFA's failure to dispute its waiver either in its reply brief or at oral argument confirms that MFA waived the issue. *Cf. U.S. v. Warren*, 788 F.3d 805, 813–814 (8th Cir. 2015) (issue not considered where appellant "failed to go beyond a cursory assertion of th[e] argument in his opening brief and made no mention of it in his reply brief or at oral argument").

### 2. The Panel Overlooked Commission and Supreme Court Precedent Establishing that Section 4(b)(1) Preemption Is Non-Jurisdictional.

Additionally, the panel erred in finding that section 4(b)(1) preemption is a "jurisdictional" issue that the court can raise *sua sponte*. Op. 3–4 n.1. Indeed, the Commission has found it "well settled" that section 4(b)(1) preemption

creates an affirmative defense that is "not jurisdictional but exemptory." *Lombard Bros., Inc.*, No. 13164, 1977 WL 7718, at *1 (OSHRC July 8, 1977).[3]

The panel also overlooked that Supreme Court precedent supports this view. A "rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Indeed, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006); *see id.* at 515–16 (statutory limitation is only jurisdictional if Congress "clearly states" as much in the text). For example, "the threshold number of employees for application of Title VII," 42 U.S.C. § 2000e, is a non-jurisdictional coverage limitation because it "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the . . . courts" and is "separate" from both Title VII's jurisdictional provision and the general federal-question statute, 28 U.S.C. § 1331. *Arbaugh*, 546 U.S. at 515 (citation omitted).

Section 4(b)(1) likewise does not speak in jurisdictional terms or refer in any way to jurisdiction, and it appears in a section of the OSH Act, 29 U.S.C.

---

[3] *See also Mansfield Indus., Inc.*, No. 19-0550, 2020 WL 8871368, at *3 n.6 (OSHRC Dec. 31, 2020) (citing *Lombard Bros.* and reaffirming that "section 4(b)(1) preemption [is an] affirmative defense[]").

§ 653 (titled "Applicability of This Act"), that is separate from the

jurisdictional provision for challenging Commission orders, 29 U.S.C.

§ 660(a)–(b), as well as the general federal-question statute, 28 U.S.C. § 1331.

Section 4(b)(1) thus creates a non-jurisdictional limitation on the working

conditions to which the OSH Act applies and the panel erred in concluding

otherwise.[4]

In relying on *U.S. Air*, moreover, the panel overlooked far more recent

precedent from the Supreme Court (like *Arbaugh*) and circuits courts narrowing

the category of issues fairly considered jurisdictional.[5] And in any event,

neither *U.S. Air* nor the case on which it relied (*Columbia Gas of Pa., Inc. v.

Marshall*, 636 F.2d 913, 918 (3d Cir. 1980)), addressed the Commission's

caselaw or reviewed section 4(b)(1)'s text for a clear statement of jurisdictional

---

[4] The Commission is also correct that section 4(b)(1) preemption is an affirmative defense that the employer must prove. *See FTC v. Morton Salt Co.*, 334 U.S. 37, 44 (1948) (burden of proving "a special exception to the prohibitions of a statute generally rests on one who claims its benefits"); *Sickle v. Torres Advanced Enter. Solutions, LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (preemption "ordinarily is an affirmative defense" that "a defendant must plead and prove").

[5] *See, e.g., StarTran v. OSHRC*, 290 F. App'x 656, 664–65 (5th Cir. 2008) (applying *Arbaugh* and determining that provision limiting OSH Act's applicability is non-jurisdictional); *Sanzone v. Mercy Health*, 954 F.3d 1031, 1038-40 (8th Cir. 2020) (applying *Arbaugh* and determining that statutory coverage limitation is non-jurisdictional).

effect. Given these oversights, the panel erred by relying on *U.S. Air* and *Columbia Gas*.

### 3. The Panel Overlooked the Absence of a Factual Finding that MFA was a General-System Railroad.

Even if the preemption issue were properly before the court (and it was not), the panel erred in assuming that FRA regulated MFA. In relying on FRA's 1978 policy statement, the panel overlooked that it was "not intended to address railroads which are not in the general system," 43 Fed. Reg. at 10585. It also overlooked that FRA excludes plant railroad operations (potentially like those in MFA's facility) from its railroad safety regulations. Appendix A to 49 C.F.R. Part 209.

Here, the panel overlooked that the Commission did not make a finding that MFA was a general-system railroad. This oversight alone justifies rehearing because, if MFA was a plant railroad (and not a general-system railroad), neither the 1978 policy statement nor FRA's safety regulations could, as a matter of law, have preempted OSHA from citing MFA.

In fact, the existing record is insufficient to discern whether MFA was a general-system or plant railroad. The record does not establish, for example, whether MFA owned or leased the spur lines on which it conducted its grain-loading operation or the scope of rail activities that were conducted on those

lines. *See Conrad Yelvington*, 2016 WL 1377794 at *2 (entity that operated on leased track that was exclusively used by it and a general-system railroad for shipping was a plant railroad).

MFA is responsible for the record deficiency regarding this question, *see supra* p. 11 n.4, and it should doom MFA's preemption defense. At a minimum, the panel should remand the case to the Commission for additional discovery and fact finding as to whether MFA was a general-system or plant railroad. Given that MFA was a grain-handling company that loaded railcars on spur lines running immediately adjacent to MFA's grain storage bins, MFA may well have been a plant railroad exempt from FRA regulation.

### 4. The Panel Overlooked that the Supreme Court Has Rejected its Approach to Defining MFA Employees' Working Conditions.

Even if MFA were a general-system railroad, the panel deviated from Supreme Court precedent when applying the preemption test. The panel cited *Chao v. Mallard Bay Drilling, Inc.,* 534 U.S. 235 (2002) when introducing the test, Op. 4, but relied on pre-*Mallard Bay* caselaw to define "working conditions" as "the environmental area in which an employee customarily goes about his daily tasks," *id.* (quoting *S. Ry. Co. v. OSHRC*, 539 F.2d 335, 339 (4th Cir. 1976)). It compounded its error by defining MFA employees' working conditions as "the environmental area of railcars." *Id.* at 6.

In so doing, the panel overlooked that *Mallard Bay* implicitly rejected the use of a strictly environment-based approach to define employees' working conditions. *Mallard Bay* acknowledged that circuits had taken "at least two approaches to defining 'working conditions,'" including the "environmental area" approach. 534 U.S. at 241 n.7. The Court declined to choose a specific definition, *id.*, but rejected the notion that an agency's partial regulation of an environmental area would preempt OSHA from regulating other conditions in that same environment. *Id.* at 243–44, 245 n.9. Such an interpretation would leave "large gaps in the regulation of occupational health and safety [that] would be plainly inconsistent with the purpose of the OSH Act." *Id.* at 245 n.9.

And when it defined the working conditions at issue in the citation, *Mallard Bay* did so in terms of the "types of risk and vessel at issue in th[e] case: namely, dangers from oil-drilling operations on uninspected barges in inland waters." *Id.* at 244. Those working conditions were distinct from conditions addressed by U.S. Coast Guard regulations that applied to the same type of vessel but targeted "matters related to marine safety," and from drilling operations conducted on the same type of vessel in different locations. *Id.* at 243–44.

Consistent with *Mallard Bay*, the panel should have defined the hazard not just in terms of the equipment on which MFA employees worked, but also

their location, the work operation, and the safety risks involved. If properly

defined as the danger of falling from the top of a stationary railcar while

opening and closing lids during a grain-loading operation at a grain-handling

facility, the panel should have recognized that FRA does not regulate those

working conditions.

### 5. The Panel Misapprehended that FRA Has Not Asserted Authority Over All Work Occurring on Top of Railcars.

The panel further erred when it determined that FRA preempted OSHA

by "assert[ing] its authority over the environmental area of railcars." Op. 6. An

agency preempts OSHA by "affirmatively regulat[ing]" working conditions,

*Mallard Bay,* 534 U.S. at 244, or by "assert[ing] comprehensive regulatory

jurisdiction" over a category of working conditions, *id.* at 244. "[M]inimal

exercise of some authority over certain conditions [in a category] does not

result in complete preemption of OSHA jurisdiction," *id.* at 241, because

"OSHA is only preempted if the working conditions at issue [in its citation] are

the particular ones 'with respect to which' another federal agency has regulated

. . . .'" *id.* (quoting 29 U.S.C. § 653(b)(1)).

FRA has *never* asserted comprehensive authority over "the

environmental area of railcars." Op. 6. Rather, FRA has asserted authority

over "the conditions and procedures necessary to achieve the safe movement

of equipment over the rails." 43 Fed. Reg. at 10585. When asserting authority

over these "traditional areas of railroad operations in which [FRA has] special

competence," *id.,* FRA plainly did *not* assert authority over *all* work occurring

on top of a railcar in *any* context.

Nor is the panel's interpretation supported by the 1978 policy

statement's discussion of "employees working around railcars" and "walking

working surfaces." *See* Op. 6. FRA's explanation that it would regulate

"human factors *which impact [ ] the safety of railroad operations,*" 43 Fed. Reg. at

10586 (emphasis added), and had issued "rules pertaining to the protection of

employees working between or under rolling equipment . . . (49 CFR part

218)," *id*, did not assert authority over *all* employees who engage in *any* work

on or around a railcar. Instead, FRA asserted authority over railroad

employees working around railcars during operations that impact the safe

movement of railroad equipment. Indeed, the regulations to which FRA

referred apply only to "railroad employees *engaged in the inspection, testing,*

*repair, and servicing of rolling equipment* whose activities require them to work on,

under, or between such equipment . . . ." 49 C.F.R. § 218.21 (emphasis added).

Likewise, by asserting authority over "the design" of railcars because

"working conditions related to such surfaces are regulated by FRA as major

aspects of railroad operations," 43 Fed. Reg. at 10587, FRA did not assert

authority over *all* work conducted on top of a railcar in *any* context. Rather, FRA asserted authority over railcar design to ensure that railcars can be safely *moved* over the rails. *See id.* at 10585 ("FRA regulation of railroad safety . . . [is] designed to promote the safe transportation of persons and property over the nation's railroads.").

The panel's view similarly cannot be squared with *Austin Indus. Specialty Services, L.P. v. OSHRC*, a case in which the Fifth Circuit determined that FRA did not preempt OSHA from citing an employer for violating a PPE standard when it exposed employees to respiratory hazards during a railcar cleaning operation. 765 F.3d 434, 439–40 (5th Cir. 2014). Although the exposed employees worked on top of railcars, *id.* at 436–37, the court found "nothing" in the 1978 policy statement indicating that FRA preempted OSHA and noted that it "specifically explains" that PPE standards "apply according to their terms, subject to exceptions not relevant here." *Id.* at 439, 439 n.1 (citation omitted).

**6. The Panel Overlooked that MFA Employees' Work on Top of Railcars Was Not Related to the Safe Movement of Railroad Equipment.**

Finally, the panel overlooked that MFA employees' work on top of railcars was not related to the safe movement of railroad equipment and was therefore outside of FRA's regulatory purview. MFA employees opened and

closed the lids of *stationary* railcars as part of a *grain-loading* operation. That activity had no relation to "the conditions and procedures necessary to achieve the *safe movement* of equipment over the rails." 43 Fed. Reg. at 10585. MFA employees' work was thus "not rooted in railroad operations nor so closely related to railroad operations as to require regulation by FRA," *id.* at 10587, and the fall hazard to which they were exposed did not "grow[] out of railroad operations," *id.* at 10588. Accordingly, OSHA's PPE standard "applie[d] according to [its] terms." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant panel rehearing.

Respectfully submitted,

JONATHAN BERRY
Solicitor of Labor

EDMUND C. BAIRD
Associate Solicitor for
Occupational Safety and Health

HEATHER R. PHILLIPS
Counsel for Appellate Litigation

*/s/ Brian A. Broecker*
BRIAN A. BROECKER
Senior Attorney
U.S. Department of Labor
200 Constitution Ave., NW,
Room S-4004
Washington, DC 20210

(202) 693-5484
broecker.brian@dol.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 29th day of January, 2026, I filed a copy of

the foregoing petition via the Court's CM/ECF Electronic Filing System,

providing service on counsel for Petitioner, listed below:

Richard C. Landon
LATHROP GPM LLP
3100 IDS Center
80 S. Eighth Street
Minneapolis, MN 55402-0000
Email: richard.landon@lathropgpm.com

Tedrick A. Housh III
LATHROP GPM LLP
Suite 2200
2345 Grand Boulevard
Kansas City, MO 64108-2612
Email: tedrick.housh@lathropgpm.com

*/s/ Brian A. Broecker*
BRIAN A. BROECKER
Senior Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(202) 693-5484
broecker.brian@dol.gov

January 29, 2026

# CERTIFICATE OF COMPLIANCE

I hereby certify that Respondent Secretary of Labor's Petition for Panel Rehearing contains 3,898 words, excluding the parts of exempted by Fed. R. App. P. 32(f), and thereby complies with Fed. R. App. P. 40(d)(3)(A). The font used was Calisto MT 14-point proportional spaced type. The brief was prepared using Microsoft Word 2016.

I further certify that the brief has been scanned for viruses and that the brief is virus-free.

/s/ *Brian A. Broecker*
BRIAN A. BROECKER
Senior Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(202) 693-5484
broecker.brian@dol.gov

January 29, 2026